1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

THOMAS P. QUINN, JR. (State Bar No. 132268)
NOKES & QUINN
410 BROADWAY, SUITE 200
LAGUNA BEACH, CA 92651
Tel: (949) 376-3500
Fax: (949) 376-3070
Email: tquinn@nokesquinn.com

Attorneys for Defendant EQUIFAX
INFORMATION SERVICES LLC

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

CHRISTOPHER SHEPARD,

               Plaintiff,

vs.

EQUIFAX   INFORMATION   SERVICES
LLC, et al.,

            Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No: 2:17-cv-01118-KJM-CKD

**DEFENDANT EQUIFAX
INFORMATION SERVICES LLC'S
BRIEF IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT**

Hearing Date: June 1, 2018
Hearing Time: 10:00 a.m.
Judge: Hon. Kimberly J. Mueller

      Defendant, Equifax Information Services LLC ("Equifax"), by counsel, files its brief in support of its motion for summary judgment. For the reasons stated below, Equifax's motion should be granted.

## TABLE OF CONTENTS

**INTRODUCTION** ........................................................................................................... **1**

**STATEMENT OF UNDISPUTED FACTS** ............................................................. **2**

**ARGUMENT** ................................................................................................................. **2**

   **I.**     **EQUIFAX IS ENTITLED TO SUMMARY JUDGMENT ON MR. SHEPARD'S CLAIMS UNDER § 1681e(b) BECAUSE HE CANNOT SHOW THAT EQUIFAX FAILED TO FOLLOW REASONABLE PROCEDURES IN REPORTING THE ACCOUNT.** ...................................... **2**

   **II.**    **EQUIFAX IS ENTITLED TO SUMMARY JUDGMENT ON MR. SHEPARD'S CLAIMS UNDER § 1681i(a) BECAUSE HE CANNOT SHOW THAT EQUIFAX FAILED TO CONDUCT REASONABLE REINVESTIGATIONS.** .................................................................................. **4**

   **III.**   **EQUIFAX IS ENTITLED TO SUMMARY JUDGMENT ON MR. SHEPARD'S DAMAGE CLAIMS.** ............................................................. **9**

       **A.**   Equifax Is Entitled To Summary Judgment On Mr. Shepard's Claims That He Was Denied Credit By Chase. ............................................. **10**

       **B.**   Equifax Is Entitled To Summary Judgment On Mr. Shepard's Claims That He Was Unable To Obtain A Home Loan. ................................. **11**

   **IV.**   **EQUIFAX IS ENTITLED TO SUMMARY JUDGMENT ON MR. SHEPARD'S CLAIM THAT EQUIFAX WILLFULLY VIOLATED THE FCRA** ............................................................................................................... **13**

**CONCLUSION** ............................................................................................................ **15**

1

2

## **TABLE OF AUTHORITIES**

3

**Page(s)**

4

**Cases**

5

6

*Anderson v. Trans Union, LLC*,
367 F. Supp. 2d 1225 (W.D. Wisc. 2005) ............................................................. 8

7

8

*Banga v. Experian Information Solutions, Inc.*,
473 F. App'x. 699 (9th Cir. 2012) ........................................................................ 9

9

10

*Banga v. First USA NA*,
29 F. Supp. 3d 1270, 1280 (N.D. Cal. 2014) ................................................... 1, 9

11

*Byrd v. TransUnion LLC*,
2010 WL 2555119 (D.S.C. June 18, 2012) ........................................................ 12

12

13

*Campbell v. Experian Info. Sol, Inc.*,
2009 WL 3834125 (W.D. Mo. Nov. 13, 2009) .................................................. 12

14

15

*Carvalho v. Equifax Information Services, LLC*,
629 F.3d 876 (9th Cir. 2010) ............................................................................... 8

16

*Casella v. Equifax Credit Info. Servs.*,
56 F.3d 469 (2d Cir. 1995) ...................................................................... 9, 12, 15

17

18

*Chiang v. Verizon New England*,
2009 WL 102707 (D. Mass. Jan. 16, 2009) ....................................................... 11

19

20

*Cousin v. Trans Union Corp.*,
246 F.3d 359 (5th Cir. 2001) .............................................................................. 14

21

22

*Darrin v. Bank of Am., N.A.*,
No. CV 12–00228 MCE, 2014 WL 1922819 (E.D. Cal. May 14, 2014) ................ 8

23

*Davis v. Equifax Info. Servs. LLC*,
346 F. Supp. 2d 1164 (N.D. Ala. 2004) ............................................................... 8

24

25

*Dickens v. Trans Union Corp.*,
18 F. App'x. 315 (6th Cir. 2001) .......................................................................... 8

26

27

*Garrett v. TransUnion, LLC*,
2006 WL 2850499 (S.D. Ohio Sept. 29, 2006) .................................................. 12

28

*Grigoryan v. Experian Info. Solutions, Inc.*,
   84 F. Supp. 3d 1044, 1067 (C.D. Cal. 2014) ................................................... 2, 3, 4

*Guimond v. Trans Union Credit Info. Co.*,
   45 F.3d 1329 (9th Cir. 1995) ........................................................................... 2

*Hill v. Equifax Info. Servs., LLC*,
   974 F. Supp. 2d 865 (M.D.N.C. 2013) ............................................................. 14

*Jianqing Wu v. Trans Union*,
   No. CIVA AW-03-1290, 2006 WL 4729755 (D. Md. May 2, 2006), *aff'd sub
   nom. Jianqing Wu v. Equifax*, 219 F. App'x 320 (4th Cir. 2007) ................... 8

*Ladner v. Equifax Credit Information Services, Inc.*,
   828 F. Supp. 427 (S.D. Miss. 1993) ................................................................ 12

*Lee v. Experian Information Solutions*,
   No. 02 C 8424, 2003 WL 22287351 (N.D. Ill. Oct. 2, 2003) .......................... 9

*Mathews v. Gov't Employees Ins. Co.*,
   23 F. Supp. 2d 1160 (S.D. Cal. 1998) .............................................................. 15

*Morris v. Trans Union LLC*,
   420 F. Supp. 2d 733 (S.D. Tex. 2006) ............................................................. 8

*Perry v. Experian Info. Solutions, Inc.*,
   No. CIV.A. 05 C 1578, 2005 WL 2861078 (N.D. Ill. Oct. 28, 2005) ............. 8

*Rambarran v. Bank of America*,
   609 F. Supp. 2d 1253 (S.D. Fla. 2009) ............................................................ 12

*Ransom v. Equifax Inc.*,
   2010 WL 1258084 (S.D. Fla. Mar. 30, 2010) ................................................. 10

*Reed v. Experian Information Solutions, Inc.*,
   321 F. Supp. 2d 1109 (D. Minn. 2004) ............................................................ 12

*Richardson v. Fleet Bank of Mass.*,
   190 F. Supp. 2d 81 (D. Mass. 2001) ................................................................ 15

*Saenz v. Trans Union LLC*,
   621 F. Supp. 2d 1074 (D. Or. 2007) ................................................................ 4

*Safeco Insurance Co. of Am. v. Burr*,
   551 U.S. 47 (2007) ............................................................................................ 13

*Shannon v. Equifax Info. Services, LLC*,
    764 F. Supp. 2d 714 (E.D. Pa. 2011) ................................................................ 8, 14

*Williams v. Equifax Credit Info. Services*,
    2007 WL 4458914 (D.S.C. Dec. 17, 2007) ............................................................ 11

**Statutes**

Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x ............................................... *passim*

15 U.S.C. § 1681e(b) .......................................................................................... 1, 2, 3, 4

15 U.S.C. § 1681i(a) ............................................................................................. 1, 4, 7, 8

15 U.S.C. § 1681n(a)(2) ............................................................................................. 13

**Other Authorities**

Fed. R. Evid. 602 ....................................................................................................... 10

Fed. R. Evid. 801 ....................................................................................................... 10

Fed. R. Evid. 802 ....................................................................................................... 10

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

This is a case under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x. Mr. Shepard opened an account with AT&T Wireless that he admittedly failed to pay. When he failed to pay the account, it was turned over to Diversified Consultants, Inc. ("DCI"), a debt collection agency. DCI reported Mr. Shepard's unpaid collection account to Equifax to be included on his credit file. He finally made his (untimely) payment on the account to bring it to a zero balance.

On these facts, Mr. Shepard alleges that Equifax willfully and negligently violated the FCRA. (Doc. 1 ¶¶ 46-51). Specifically, Mr. Shepard alleges that Equifax violated 15 U.S.C. § 1681e(b) by failing to maintain procedures to assure maximum possible accuracy of the information when it prepared his consumer reports and 15 U.S.C. § 1681i(a) by failing to conduct reasonable reinvestigations with respect to his credit disputes of a balance on the DCI collection account after he had (belatedly) paid the balance that was (over) due. (Doc. 1 ¶ 37). He seeks actual damages or statutory damages, punitive damages, and attorney's fees and costs. (*Id.* ¶¶ 43, 51).

Equifax is entitled to summary judgment on all of Mr. Shepard's claims against it for at least the following reasons. *First*, Mr. Shepard's claims under § 1681e(b) fail because he cannot show that Equifax failed to follow reasonable procedures in preparing consumer reports about him. *Second*, Mr. Shepard's claim under § 1681i(a) fail because Equifax performed reasonable reinvestigations of the disputed information and sent him the reinvestigation results. *Third*, Mr. Shepard has failed to present evidence that he suffered any credit denials as a result of any inaccurate Equifax consumer report and Equifax is entitled to summary judgment on any claims for alleged credit denials. *Fourth*, Mr. Shepard has failed to present evidence sufficient to support his claim for a willful violation of the FCRA. Accordingly, the Court should grant Equifax's motion.

**STATEMENT OF UNDISPUTED FACTS**

Equifax has separately filed its Statement of Undisputed Facts which it incorporates herein by reference.

**ARGUMENT**

**I.     EQUIFAX IS ENTITLED TO SUMMARY JUDGMENT ON MR. SHEPARD'S CLAIMS UNDER § 1681e(b) BECAUSE HE CANNOT SHOW THAT EQUIFAX FAILED TO FOLLOW REASONABLE PROCEDURES IN REPORTING THE ACCOUNT.**

The FCRA requires a consumer reporting agency ("CRA") to maintain reasonable procedures to assure maximum possible accuracy about a consumer's information when it prepares a consumer report. 15 U.S.C. § 1681e(b). The FCRA does not impose strict liability on a CRA for inaccurate entries. *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995). The FCRA recognizes the reality of unavoidable mistakes and imposes no liability for inaccuracies when an agency has followed reasonable procedures. *See Grigoryan v. Experian Info. Solutions, Inc.*, 84 F. Supp. 3d 1044, 1067 (C.D. Cal. 2014) ("A credit reporting agency does not violate § 1681e(b) or § 1785.14(b) 'simply by reporting information that may be inaccurate.'") (quoting *Darrin v. Bank of Am., N.A.*, No. CV 12–00228 MCE, 2014 WL 1922819, *6 (E.D. Cal. May 14, 2014)). Rather, the inquiry focuses on whether the CRA's procedures for preparing the consumer's file are reasonable and designed to prevent inaccuracies. *Guimond*, 45 F.3d at 1334 ("Liability under § 1681e(b) is predicated on the reasonableness of the credit reporting agency's procedures in obtaining credit information."); *Grigoryan*, 84 F. Supp. 3d at 1067 (same) (quoting *Guimond*, 45 F.3d at 1333).

"If a consumer reporting agency accurately transcribes, stores and communicates consumer information received from a source that it reasonably believes to be reputable, and which is credible on its face, the agency does not violate [§ 1681e(b) or § 1785.14(b)] simply by reporting an item of information that turns out to be inaccurate." *Grigoryan*, 84 F. Supp. 3d at 1067 (quoting *Darrin v. Bank of Am., N.A.*, No. CV 12–00228 MCE, 2014 WL 1922819, *6

1    (E.D. Cal. May 14, 2014) (quoting *Saenz v. Trans Union LLC*, 621 F. Supp. 2d 1074, 1081 (D.

2    Or. 2007) (in turn quoting 16 C.F.R. Pt. 600, App., § 607.3(A))).

3           In this case, DCI is an entity that Equifax has determined to be a reliable source of

4    information. (SUF ¶ 29). Equifax maintains detailed procedures designed to assure maximum

5    possible accuracy of the information it reports to its subscribers regarding consumers and to correct

6    errors that are brought to its attention. (SUF ¶ 4). Equifax accepts credit information only from

7    those sources of information that it has determined are reasonably reliable based upon Equifax's

8    own investigation, the source's reputation in the community, and/or Equifax's longstanding

9    business relationships with it. (SUF ¶ 5). Equifax obtains consumer credit information from data

10   furnishers in a standard electronic format. (SUF ¶ 6). Upon receipt of data, Equifax conducts a

11   series of computerized quality checks before adding the data to its consumer database. (SUF ¶ 7).

12   These checks are designed to determine whether the data is in the proper format and whether the

13   data as a whole deviates from expected norms (based on past experience with the particular source).

14   (SUF ¶ 8). Mr. Shepard offers no evidence that Equifax had reason to believe that DCI was not a

15   reasonably reliable source of information. Thus, Equifax was entitled to rely on facially credible

16   information received from DCI. *See Grigoryan*, 84 F. Supp. 3d at 1068.

17          Mr. Shepard offers no evidence that raises triable issues of fact concerning the

18   reasonableness of Equifax's § 1681e(b) procedures to ensure accuracy. In the present case, Mr.

19   Shepard bears the burden of proof to demonstrate that Equifax's procedures were unreasonable.

20   During the course of discovery, Mr. Shepard did nothing to develop such evidence. The only

21   evidence in the case about Equifax's procedures is the evidence presented by its employee, Ms.

22   Gobin.[1] Mr. Shepard did not depose DCI. These evidentiary failures require summary judgment

23   in favor of Equifax. The fact that Mr. Shepard alleges that the information may have been

24   inaccurate does not demonstrate that Equifax did not employ reasonable procedures to ensure the

25   accuracy of the information under § 1681e(b), as its obligations under the FCRA "relate[s] to the

26

27   _____

     [1] Mr. Shepard also deposed Equifax's employee, Pamela Smith, as a corporate representative.

28

maintenance and operation of [its] own internal databases rather than to investigation of the accuracy of information received from external sources." *Saenz*, 621 F. Supp. 2d at 1081.

Equifax is entitled to summary judgment on Mr. Shepard's claims under § 1681e(b) because Equifax was entitled to reasonably relied on DCI when it reported the Account. Because a consumer reporting agency receiving a facially credible report from a source that it believes to be reputable is not liable under § 1681e(b) merely because the report contains inaccurate information, and because Mr. Shepard has failed to offer any evidence that DCI is not a reasonably reliable source, the Court should grant summary judgment in Equifax's favor on Mr. Shepard's § 1681e(b) claims. *See Grigoryan*, 84 F. Supp. 3d at 1068.

## II. EQUIFAX IS ENTITLED TO SUMMARY JUDGMENT ON MR. SHEPARD'S CLAIMS UNDER § 1681i(a) BECAUSE HE CANNOT SHOW THAT EQUIFAX FAILED TO CONDUCT REASONABLE REINVESTIGATIONS.

Equifax is entitled to summary judgment on Mr. Shepard's claims concerning Equifax's reinvestigations of the Account under § 1681i(a) because Equifax conducted reasonable reinvestigations as a matter of law. The undisputed facts show that Equifax maintains detailed procedures to investigate consumer disputes. (SUF ¶¶ 9-24). The undisputed facts also show that Equifax conducted reasonable reinvestigations of Mr. Shepard's disputes. (SUF ¶¶ 34-109).

In his first dispute to Equifax about the Account (July 8, 2016), Mr. Shepard provided the statement: "This was paid to ATT when the account was closed." (SUF ¶ 37). Mr. Shepard knew this statement was false when he provided it. Mr. Shepard did not pay the AT&T account when it was closed; indeed, he had not yet paid the Account when he provided that statement on July 8, 2016. Mr. Shepard testified that he closed the Account in late 2015 (SUF ¶ 26), but he didn't pay the $225 amount due until many months later in August 2016, after he saw it appear as a DCI collection account in his credit file and a month after he provided that statement to Equifax. (SUF ¶ 33). Indeed, it was the appearance of the Account as a collection account rather than the closing of the account that caused Mr. Shepard to finally pay the $225. (*Id.*). Mr. Shepard did not provide any documents to Equifax to support his first dispute. (SUF ¶ 38). As part of its reinvestigation, Equifax contacted DCI by ACDV on July 8, 2016, and provided DCI with all of the information

1  it received from Mr. Shepard. (SUF ¶ 39). On July 14, 2016, DCI, through its employee, Kylee

2  Nettles, responded to Equifax and verified the $225 balance. (SUF ¶ 40). (ACDV attached as Ex.

3  A). On July 23, 2016, Equifax provided Mr. Shepard with its reinvestigation results. (SUF ¶ 42).

4        In his second dispute to Equifax (September 19, 2016), Mr. Shepard provided the

5  statement: "I paid this account with ATT before it was sent to collections." (SUF ¶ 46). Again,

6  Mr. Shepard knew this statement was false when he provided it. Mr. Shepard paid the Account

7  after it went to collections and after he saw it appear as a DCI collection account in his credit file.

8  (SUF ¶ 33). Mr. Shepard did not provide any documents to support his second dispute. (SUF

9  ¶ 47). As part of its reinvestigation, Equifax contacted DCI by ACDV on September 19, 2016 and

10 provided DCI with all of the information it received from Mr. Shepard. (SUF ¶ 48). On

11 September 30, 2016, DCI, through its employee, Madison Hudson, responded to Equifax and

12 verified the $225 balance. (SUF ¶ 49). (ACDV attached as Ex. B). On October 3, 2016, Equifax

13 provided Mr. Shepard with its reinvestigation results. (SUF ¶ 51).

14       In his third dispute to Equifax (December 12, 2016), Mr. Shepard provided the statement:

15 "This account was for ATT and was paid off with them in August of 2016." (SUF ¶ 54). This

16 statement, although correct, directly contradicted his statements in his first and second disputes.

17 (SUF ¶¶ 37, 46). Equifax's records showed that the Account was assigned to DCI as a collection

18 account in May 2016; thus, Mr. Shepard's statement that the Account was "paid off" in August

19 2016 meant that he was not being trustworthy when he stated that he had paid the Account when it

20 was "closed" in his first dispute or when he stated he had paid the Account "before it was sent to

21 collections" in his second dispute. (SUF ¶¶ 37, 46, 54). Mr. Shepard proved to Equifax that he was

22 not a trustworthy or reliable source of information. Mr. Shepard did not provide any documents to

23 support his third dispute. (SUF ¶ 55). As part of its reinvestigation, Equifax contacted DCI by

24 ACDV on September 19, 2016 and provided DCI with all of the information it received from Mr.

25 Shepard. (SUF ¶ 56). On September 30, 2016, DCI, through its employee, Madison Hudson,

26 responded to Equifax and verified the $225 balance. (SUF ¶ 57). (ACDV attached as Ex. C). On

27 December 21, 2016, Equifax provided Mr. Shepard with its reinvestigation results. (SUF ¶ 59).

28

For his fourth and fifth dispute, Mr. Shepard submitted a telephone dispute and an online dispute on December 22, 2016. (SUF ¶¶ 60, 68). Mr. Shepard did not provide any documents to support these disputes. (SUF ¶¶ 63, 70). As part of its reinvestigations, Equifax contacted DCI by ACDVs on December 22, 2016 and provided DCI with all of the information it received from Mr. Shepard. (SUF ¶¶ 64, 71). On December 29 and 30, 2016, DCI, through its employee, Courtney Bryant, responded to Equifax and verified the $225 balance. (SUF ¶¶ 65, 72). (ACDVs attached as Exs. D, E). On December 30, 2016, Equifax provided Mr. Shepard with its reinvestigation results. (SUF ¶ 67).

In his January 12, 2017 dispute, Mr. Shepard, for the first time, submitted a document with his dispute. (SUF ¶ 76). The document purported to be an email between DCI and him. (*Id.*; email attached as Ex. F). As part of its reinvestigation, Equifax contacted DCI by ACDV on January 12, 2017 and provided DCI with all of the information it received from Mr. Shepard, including the above-referenced email. (SUF ¶ 77). On January 16, 2017, DCI, through its employee, Courtney Bryant, responded to Equifax and verified the $225 balance. (SUF ¶ 78). (ACDV attached as Ex. G). On January 17, 2017, Equifax provided Mr. Shepard with its reinvestigation results. (SUF ¶ 80).

On January 19, 2017, Mr. Shepard submitted an online dispute and a facsimile dispute. (SUF ¶¶ 81, 88). Both disputes provided a document that purported to be a letter dated that same date from DCI to Mr. Shepard, and stated:

> The above-mentioned account has been paid in full. **Upon return of payment for any reason, this letter would no longer be valid.**

(SUF ¶¶ 83, 89 (emphasis added); documents attached as Exs. H, J). The letter suggested that Mr. Shepard had made payment to DCI but that payment had not cleared yet. As part of its reinvestigation, Equifax contacted DCI by ACDV on January 19 and 24, 2017 and provided DCI with all of the information it received from Mr. Shepard, including the above-referenced documents. (SUF ¶¶ 84, 91). On January 23 and 25, 2017, DCI, through its employees, Elaine Brantley and Leesandra Arocho, responded to Equifax and verified the $225 balance. (SUF ¶¶ 85,

92; ACDVs attached as Exs. I, K). On January 24 and 25, 2017, Equifax provided Mr. Shepard with its reinvestigation results. (SUF ¶¶ 87, 94).

On February 7, 2017, Equifax received a cover letter, a document that purported to be an AT&T Wireless Statement, and the same January 19, 2017 letter purportedly from DCI. (SUF ¶ 96; documents attached as Ex. L). Mr. Shepard's AT&T Wireless account had been assigned to DCI as a collection account in May 2016. (SUF ¶ 28). The document that purported to be the AT&T Wireless statement was dated August 2016. (Ex. L). Although it showed a payment had been made on an AT&T Wireless account on August 9, 2016, the date of that payment directly contradicted Mr. Shepard's statements that he had paid the $225 due when the account was "closed" in his first dispute and that he had paid the Account "before it was sent to collections" in his second dispute. (SUF ¶¶ 37, 46). In addition, DCI had not provided Equifax with Mr. Shepard's original AT&T Wireless account number to confirm if this purported statement reflected payment on the same account. (SUF ¶ 30). As part of its reinvestigation, Equifax contacted DCI by ACDV on February 9, 2017 and provided DCI with the information it received from Mr. Shepard, including the letter and above-referenced documents. (SUF ¶ 98). On February 10, 2017, DCI, through its employee, Leesandra Arocho, responded to Equifax and verified the $225 balance. (SUF ¶ 99; ACDV attached as Ex. M). On February 11, 2017, Equifax provided Mr. Shepard with its reinvestigation results. (SUF ¶ 101).

Section 1681i(a) states, "if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer," the agency must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . ." 15 U.S.C. § 1681i(a)(1)(A). Section 1681i(a) obligates credit reporting agencies to reinvestigate disputes when the completeness or accuracy of information has been challenged. *Id.*

Section 1681i(a)(5)(D) requires national CRAs to implement an automated system for reinvestigations. Equifax uses the ACDV process. (*Id.* ¶¶ 21-26). Although the Ninth Circuit has not expressly ruled on whether reliance on an ACDV system is in itself reasonable under

§ 1681i,[2] *Darrin*, 2014 WL 1922819, at *9, many courts have found that the ACDV process which allows for the quick and efficient transfer of information, is reasonable as a matter of law and have granted summary judgment in cases such as this. *See, e.g.*, *Dickens v. Trans Union Corp.,* 18 F. App'x. 315, 319 (6th Cir. 2001); *Jianqing Wu v. Trans Union*, No. CIVA AW-03-1290, 2006 WL 4729755, at *7 (D. Md. May 2, 2006), *aff'd sub nom. Jianqing Wu v. Equifax*, 219 F. App'x 320 (4th Cir. 2007); *Shannon v. Equifax Info. Services, LLC*, 764 F. Supp. 2d 714, 725 (E.D. Pa. 2011) (citing numerous cases); *Morris v. Trans Union LLC,* 420 F. Supp. 2d 733, 756 (S.D. Tex. 2006); *Anderson v. Trans Union, LLC,* 367 F. Supp. 2d 1225, 1233 (W.D. Wisc. 2005); *Perry v. Experian Info. Solutions, Inc.*, No. CIV.A. 05 C 1578, 2005 WL 2861078, at *7-8 (N.D. Ill. Oct. 28, 2005); *Davis v. Equifax Info. Servs. LLC*, 346 F. Supp. 2d 1164, 1175 (N.D. Ala. 2004).

Consumer reporting agencies are not required to deem consumers "innocent until proven guilty by a proper reinvestigation." *Carvalho v. Equifax Information Services, LLC*, 629 F.3d 876, 881 (9th Cir. 2010). Mr. Shepard had repeatedly provided inconsistent statements to Equifax. On the other hand, DCI had proven to be a reliable source of information. (SUF ¶ 29). Accordingly, Equifax acted reasonably in sending Mr. Shepard's statements and documents to DCI by ACDV emails for verification. DCI verified the $225 balance due on the Account every single time, and it did so through several different employees.

Here, Equifax did not violate § 1681i(a) because it did precisely what was required of it under the Act – it received the disputes, considered the information provided by Mr. Shepard, contacted DCI, provided it with the information provided by Mr. Shepard, and reported the results to him all within 30 days. Under these circumstances, Mr. Shepard's claims under § 1681i(a) fail as a matter of law.

---

[2] The Ninth Circuit has, however, found that a "CRA's 'reasonable reinvestigation' consists largely of triggering the investigation" of the credit furnisher. *Darrin*, 2014 WL 1922819, at *9 (citing *Gorman v. Wolpoff & Abramson, LLP,* 584 F.3d 1147, 1156 (9th Cir. 2009)).

### III.   EQUIFAX IS ENTITLED TO SUMMARY JUDGMENT ON MR. SHEPARD'S DAMAGE CLAIMS.

Mr. Shepard alleges that Chase Bank USA, N.A. ("Chase") denied his request for a credit card on three occasions, and that he could not qualify for a home loan. (SUF ¶¶ 110, 114). To establish his claim for damages for Equifax's alleged violation of the FCRA, Mr. Shepard must prove, among other things, actual damages that were proximately caused by the alleged violations. *See, e.g., Banga v. Experian Information Solutions, Inc.*, 473 F. App'x. 699, 700 (9th Cir. 2012) ("The district court properly granted summary judgment on Banga's claims for negligent violations under § 1681o of the Act because she failed to raise a triable dispute as to whether defendants' conduct resulted in actual damages"); *Banga v. First USA NA*, 29 F. Supp. 3d 1270, 1280 (N.D. Cal. 2014) ("To the extent this claim alleges a negligent violation of the FCRA, summary judgment in favor of Chase is warranted because Plaintiff has failed to adduce evidence raising a genuine issue for trial as to whether she has suffered any actual damages caused by Chase"); *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 473 (2d Cir. 1995); *Lee v. Experian Information Solutions*, No. 02 C 8424, 2003 WL 22287351, *5 (N.D. Ill. Oct. 2, 2003) (granting summary judgment where additional credit blemishes, either singularly or in combination, could have accounted for plaintiff's inability to take advantage of credit opportunities).

Mr. Shepard cannot prove that Equifax's alleged negligent or willful violations of the FCRA caused his alleged credit denials for several reasons. *First*, Mr. Shepard cannot show that his damages were caused by an unpaid balance appearing on the Account. Mr. Shepard's account was assigned by AT&T Wireless to DCI in May 2016, long before Mr. Shepard made his alleged August 2016 payment. (SUF ¶ 28). Thus, the Account was indisputably a ***collection account***. Whether a collection account shows a balance or not has no effect on a consumer's ability to obtain credit. As John Ulzheimer stated in his expert report:

> Regarding the balance of the DCI collection, it was meaningless to the Plaintiff's FICO credit scores. Balances on collections are not relevant to FICO's credit scores because FICO's scoring models do not contain characteristics that consider the balances on collection accounts. As far as a collection's impact to FICO

scores, only the age of the collection and the fact that a collection exists matters, not the balance of any collections.

(Ex. Q at 13). Equifax accurately reported the Account as a collection account. The disputed unpaid balance of $225 had no impact on Mr. Shepard's ability to obtain credit. Moreover, Mr. Shepard has offered no evidence that he was denied credit as the result of an inaccurate Equifax consumer report about him. Rather, as Mr. Ulzheimer states, the undisputed evidence shows that any alleged credit denials were caused by the considerable amount of unrelated derogatory entries on Mr. Shepard's credit file:

> To add context to the Plaintiff's damage assertion, it's important to point out that the Plaintiff's credit report contained a considerable amount of unrelated derogatory entries as of July 2016[6] that certainly would have been negatively influential to any loan or credit card application. These derogatory entries include ~62 late payments spread across 4 different credit obligations indicating delinquency as severe as 180 days past due. Late payments, including their severity and prevalence, are key components in FICO's credit scoring systems and can lead to a low credit score. In fact, derogatory entries are the most influential components of a consumer's credit report entries.

(Ex. Q at 13). Mr. Shepard fail to offer evidence to establish that his damages were caused by Equifax. Because Mr. Shepard cannot prove that his alleged damages were caused by Equifax's alleged violations, Equifax is entitled to summary judgment on those claims.

### A.   Equifax Is Entitled To Summary Judgment On Mr. Shepard's Claims That He Was Denied Credit By Chase.

Mr. Shepard alleges that he was denied a credit card by Chase on three occasion. (SUF ¶ 110). Mr. Shepard fails to offer evidence to establish that the alleged Chase credit card denials were caused by Equifax. Mr. Shepard did not take the deposition of Chase or any of their employees. A witness may not testify to a matter "unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Mr. Shepard does not have personal knowledge of the reasons for the alleged denial. Accordingly, any information he provides concerning information allegedly provided to him by Chase is barred under the hearsay rule (Fed. R. Evid. 801(c), 802), as a number of courts have held in FCRA cases under similar circumstances. *See*, *e.g.*, *Ransom v. Equifax Inc.*, 2010 WL 1258084, *4 (S.D.

Fla. Mar. 30, 2010) (granting summary judgment and holding, in an FCRA case, that letters from creditors are "hearsay documents and cannot be considered on a motion for summary judgment"); *see also Chiang v. Verizon New England*, 2009 WL 102707, *5 (D. Mass. Jan. 16, 2009) (sustaining objection to letters sent from financial institutions to consumer "regarding the basis for their denials of his loan applications"); *Williams v. Equifax Credit Info. Services*, 2007 WL 4458914, *3 (D.S.C. Dec. 17, 2007) (refusing to consider unauthenticated lender documents on a motion for summary judgment). In other words, Mr. Shepard has no admissible evidence to support his claim for damages arising from the alleged Chase denial of additional credit, and that failure should result in the entry of summary judgment in Equifax's favor on any claims related to the Chase credit cards.

As Equifax's expert, Mr. Ulzheimer, notes in his expert report, there are no Adverse Action denial letters from Chase in Mr. Shepard's document production so there is no evidence supporting Mr. Shepard's claim that he was denied credit or denied credit based on an Equifax credit report. (Ex. Q at 13). Adverse Action letters are required disclosure when a consumer is denied credit based on his or her credit report and/or credit score. (*Id.*). The Plaintiff's denials are speculative. (*Id.*).

Mr. Shepard testified that he discarded the denial letters. (SUF ¶ 111). He further testified that Chase approved two credit cards for him during the same time period. (SUF ¶ 112). More importantly, Mr. Shepard testified that he did not recall if the alleged credit denials were based on consumer reports provided by Equifax, Experian, or a different consumer reporting agency. (SUF ¶ 113). Accordingly, he cannot show that any alleged Chase credit card denials were caused by Equifax, let alone Equifax's alleged violation of the FCRA, and Equifax is entitled to dismissal of this claim.

**B.      Equifax Is Entitled To Summary Judgment On Mr. Shepard's Claims That He Was Unable To Obtain A Home Loan.**

In his deposition, Mr. Shepard conceded that he did not formally apply for any mortgage loans, he merely spoke briefly in "generalities" with a mortgage broker about the possibility of

being approved for a mortgage loan. (SUF ¶ 115). Mr. Shepard's failure to actually apply for credit is fatal to his claim for lost credit opportunity. Under similar circumstances, courts addressing FCRA claims have consistently held that an alleged lost opportunity to obtain credit is too speculative, absent evidence that the consumer actually was deprived of a loan or credit, to support a claim for damages. *See, e.g., Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 475 (2d Cir. 1995) (absent a denied application, damages were too speculative for recovery); *Byrd v. TransUnion LLC*, 2010 WL 2555119, *3 (D.S.C. June 18, 2012) (decision on motion in limine, holding that "loss of opportunity to receive credit, absent some evidence that [plaintiff] actually applied for and was denied credit because of an error in an Equifax credit report, is too speculative to support a claim for economic damages"); *Campbell v. Experian Info. Sol, Inc.*, 2009 WL 3834125, *8 (W.D. Mo. Nov. 13, 2009) (credit-expectancy damages not allowed because such damages were too speculative); *Rambarran v. Bank of America*, 609 F. Supp. 2d 1253, 1265 (S.D. Fla. 2009) (claim that plaintiff would have applied for credit but decided not to do so out of a concern that a rejected credit application would further harm his credit rating was too speculative to withstand summary judgment); *Garrett v. TransUnion, LLC*, 2006 WL 2850499, *12 (S.D. Ohio Sept. 29, 2006) (summary judgment on claims for loss of credit opportunities or credit expectancy granted because they were too speculative); *Ladner v. Equifax Credit Information Services, Inc.*, 828 F. Supp. 427, 431 (S.D. Miss. 1993) (no damages sustained where plaintiff did not complete a loan application after learning of credit file inaccuracies); *Reed v. Experian Information Solutions, Inc.*, 321 F. Supp. 2d 1109, 1115 (D. Minn. 2004) (finding "lost economic opportunities… are not recoverable under FCRA"). In *Casella*, for example, the Second Circuit rejected an argument that the plaintiff had suffered actual damages because he had lost opportunities to take advantage of favorable home loan mortgage interest rates and low housing prices as a result of erroneous consumer reports. 56 F.3d at 474. The court held that, "in the absence of any evidence that [the plaintiff] made an offer to purchase property or applied for a home mortgage, the 'lost opportunity' damages he alleged were too speculative." *Id*. Here, Mr. Shepard did not even apply for a mortgage. He offers only

speculation regarding his alleged losses, and, therefore, summary judgment should be granted in favor Equifax's on this item of damages.

## IV.    EQUIFAX IS ENTITLED TO SUMMARY JUDGMENT ON MR. SHEPARD'S CLAIM THAT EQUIFAX WILLFULLY VIOLATED THE FCRA.

The FCRA permits awards of statutory and punitive damages only if a consumer reporting agency "willfully fails to comply with any requirement" imposed by the Act. 15 U.S.C. § 1681n(a)(2). In *Safeco Insurance Co. of Am. v. Burr*, 551 U.S. 47 (2007), the Supreme Court of the United States considered the meaning of the word "willfully" in this context and concluded that the term is broad enough to include both intentional and reckless violations of the law. The Court noted that "the term recklessness is not self-defining," but that, in the civil context, it is "generally understood . . . as conduct violating an objective standard: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Safeco*, 551 U.S. at 68 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). Thus, to establish a willful violation of the FCRA, Mr. Shepard must demonstrate that Equifax engaged in conduct that ran a risk of violating the FCRA substantially greater than mere carelessness. Although some courts have stated that willfulness must generally be determined by a jury, the Supreme Court demonstrated otherwise in *Safeco*, where it held as a matter of law that the defendant had not acted recklessly. *See id.* at 71.

The evidence in the record reflects that Equifax maintains detailed procedures to assure maximum possible accuracy of the information it reports to its subscribers regarding consumers (SUF ¶¶ 4-8) and to investigate consumer disputes (SUF ¶¶ 9-24). As Mr. Shepard conceded in his Complaint, Equifax dutifully conducted an investigation each time Mr. Shepard made a dispute concerning information reporting on his credit file (Doc. 1 ¶ 30; SUF ¶¶ 34-109). Mr. Shepard has no evidence that Equifax intentionally and recklessly violated the law to sustain a willfulness claim. *See Safeco*, at 69 (standard for willfulness).

To the extent Mr. Shepard finds fault with Equifax's use of the ACDV process, courts have upheld the reasonableness of this process as a matter of law and have rejected willfulness

claims in the process. As one district court held in granting summary judgment in favor of Equifax on a willfulness claim:

> As for Equifax's reinvestigation procedures, all three of the major credit reporting agencies have similar ones, and the ACDV approach has been upheld as a matter of law by other courts. . . . Once again, given that Equifax's approach has been upheld as a matter of law by other courts, Equifax's actions did not constitute a high risk that was known or should have been known. Thus[,] although a jury might find Defendant's investigation and reinvestigation were negligently performed in this instance, there is no indication that the company behaved recklessly, let alone intentionally or knowingly.

*Shannon*, 764 F. Supp. 2d at 725 (citing numerous cases).

With respect to Mr. Shepard's disputes, the evidence demonstrates that Equifax reviewed the information and conducted a reinvestigation on each occasion. (SUF ¶¶ 34-109). That is not the stuff of a willfulness claim, especially where, as here, Mr. Shepard initiated his disputes with inaccurate information concerning his payments, the status of the Account, and his letters from DCI were equivocal on whether his payment was effective.

In *Hill v. Equifax Info. Servs., LLC*, 974 F. Supp. 2d 865, 876 (M.D.N.C. 2013), a district court granted summary judgment on claims for willful FCRA violations where the plaintiff had "presented evidence of numerous mistakes by Defendant." The plaintiff's "speculation" regarding an alleged systemic problem with the CRA's procedures was "not sufficient to rebut sworn testimony directed at the actual procedures employed in the interactions between Plaintiff and Equifax." *Hill*, 974 F. Supp. 2d at 876-77 (citing *Birmingham v. Experian Info. Solutions, Inc.*, 633 F.3d 1006, 1009 (10th Cir. 2011) (affirming summary judgment with respect to willfulness where plaintiff had "pointed to no described practice that would be a reckless violation of the FCRA" and where there was "no evidence that Experian's specific actions with respect to Birmingham were reckless")). In *Hill*, the court granted summary judgment in favor of the CRA despite its finding that the plaintiff might have been able to establish negligence but had "not shown a described practice that would be reckless," nor "provided any evidence that Defendant's procedures were unreasonable." *Id.* at 877. *See also*, *e.g.*, *Cousin v. Trans Union Corp.*, 246 F.3d 359, 374-75 (5th Cir. 2001) (insufficient proof of willfulness based on furnisher's re-reporting of

incorrect adverse information to a consumer reporting agency); *Richardson v. Fleet Bank of Mass.*, 190 F. Supp. 2d 81, 86 (D. Mass. 2001) (CRA's failure to correct file after receiving notice of errors "does not constitute evidence of a willful violation."); *Mathews v. Gov't Employees Ins. Co.*, 23 F. Supp. 2d 1160, 1165 (S.D. Cal. 1998) (finding of willful noncompliance with the FCRA more likely if the defendant's violations result from a failure to maintain reasonable procedures as opposed to an isolated instance of human error involving a single plaintiff).

In the present case, it is undisputed that Equifax conducted a reinvestigation of each and every one of Mr. Shepard's disputes concerning the DCI collection account. Equifax reported the results of the reinvestigations to Mr. Shepard. DCI verified the accuracy of the balance of the Account in each of Equifax's reinvestigations. Both Mr. Shepard, through his constantly changing description of his dispute, and DCI, through its constant ACDV verification to Equifax of the $225 balance but email and letter to Mr. Shepard stating there was $0 balance, sent direct and indirect mixed signals to Equifax. Given these mixed and changing messages, Equifax's reinvestigations of Mr. Shepard's disputes could not have been a willful violation of the FCRA. *See Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 476 (2d Cir. 1995) (holding there was no willful violation where the furnisher "sen[t] mixed signals to . . . Equifax" by "continu[ing] to report that [plaintiff] had a past due obligation [and] that information was [re]entered in [the plaintiff's] credit file."). There is simply no evidence in this case of any willful, or even negligent violation. Mr. Shepard's willfulness claim fails as a matter of law. Accordingly, the Court should grant summary judgment in favor of Equifax on Mr. Shepard's willfulness claims.

## <u>CONCLUSION</u>

For the reasons stated above, Equifax requests that its motion be granted.

Dated: April 27, 2018

NOKES & QUINN
 /s/ Thomas P. Quinn, Jr.
THOMAS P. QUINN, JR.
Attorneys for Defendant
EQUIFAX INFORMATION SERVICES LLC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>CERTIFICATE OF SERVICE</u>**
**Shepard v. Equifax Information Services, LLC, et al**
**Case No.: 2:17-cv-01118-KJM-CKD**

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of Orange, State of California, and not a party to the above-entitled cause.

On April 27, 2018, I served a true copy of **DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**:

[ ]     By personally delivering it to the persons(s) indicated below in the manner as provided in FRCivP5(B);

[X]     By depositing it in the United States Mail in a sealed envelope with the postage thereon fully prepaid to the following;

[ ]     By ECF: On this date, I electronically filed the following document(s) with the Clerk of the Court using the CM/ECF system, which sent electronic notification of such filing to all other parties appearing on the docket sheet;

I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

I hereby certify under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.


　　　　　　　　　　　　　　*/s/ Thomas P. Quinn, Jr.*　　　　　
　　　　　　　　　　　　　　THOMAS P. QUINN, JR.

Place of Mailing: Laguna Beach, California.
Executed on **April 27, 2018,** at Laguna Beach, California.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SERVICE LIST**

Wayne A Sinnett
Sinnett Law APC
444 West C Street
Suite 230
San Diego, CA 92101
619-752-0703
Fax: 619-330-2120
Email: ws@sinlegal.com
*Attorney for Plaintiff*

Debbie P. Kirkpatrick
James Kevin Schultz
Sesions Fishman Nathan & Israel, LLP
1545 Hotel Circle South
Suite 150
San Diego, CA 92108
619/758-1891
Fax: 619/296-2013
Email: dkirkpatrick@sessions.legal
Email: jschultz@sessions.legal
*Attorney for Diversified Consultants, Inc.*