UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER SHEPARD, | No. 2:17-cv-01118-KJM-CKD |
| Plaintiff, | |
| v. | ORDER |
| EQUIFAX INFORMATION SERVICES, LLC., | |
| Defendant. | |

In this Fair Credit Reporting Act case, plaintiff alleges defendant repeatedly included erroneous information in plaintiff's credit report despite plaintiff's numerous attempts to correct the errors. Defendant has moved for summary judgment. For the following reasons, the court DENIES the motion.

I. BACKGROUND

Defendant Equifax Information Services, LLC ("Equifax") is a consumer reporting agency ("CRA") as defined in the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681–1681x. Undisputed Material Fact ("UMF") 1, ECF No. 48-31.[1] As a CRA, Equifax gathers information

---

[1] The court has determined whether a material fact is disputed by reviewing plaintiff's responses, ECF No. 48-31, to defendant's statement of undisputed material facts, ECF No. 42. Where plaintiff identifies a dispute, the court refers to the fact as a Disputed Fact ("DF").

about consumers from various sources, including banks, collection agencies and court records, to create credit files. UMF 2. This case concerns credit reports Equifax created for plaintiff Christopher Shepard ("Shepard").

Equifax contends it maintains detailed procedures to ensure the consumer information it reports is accurate. DF 4. These procedures include accepting credit information only from data furnishers Equifax deems reasonably reliable based on Equifax's investigations, the source's reputation and the source's business relationship with Equifax. DF 5. Equifax receives credit information from furnishers in a standard electronic format and it runs computerized quality checks before adding data to its consumer database. DF 6–7. In these quality checks, Equifax determines whether the data is in the proper format and whether it deviates from Equifax's expected norms based on its prior experience with the furnisher. DF 8. As relevant here, Equifax has deemed Diversified Consultants, Inc. ("DCI") a reliable source of information based on the history of its relationship with DCI. DF 29.

Equifax also maintains policies and procedures governing its reinvestigation of information consumers dispute as inaccurate. DF 9. When Equifax receives a consumer dispute, it assigns the dispute a unique confirmation number, locates the consumer's credit file and opens an Automated Consumer Interview System ("ACIS") case to track its reinvestigation process. UMF 10–12. Equifax then reviews and considers all relevant information, including documentation provided by the consumer. DF 13. When possible, Equifax updates its information. DF 14. But when Equifax is unable to verify the accuracy of the disputed information, it notifies the data furnisher of the dispute. DF 17. Equifax typically initiates such inquiries with its furnishers by sending a form, referred to as an Automated Consumer Dispute Verification ("ACDV"), by email. UMF 18. Through ACDVs, Equifax communicates with furnishers by using pre-defined codes and narrative phrases and, when necessary, by adding additional information in a "FCRA Relevant Information" field. UMF 19–20. After receiving an ACDV from Equifax, a furnisher is generally required to conduct its own investigation, the results of which it reports back to Equifax. UMF 21. When the reinvestigation is complete, Equifax takes necessary action and reports the results to the
/////

consumer along with a summary of the consumer's FCRA rights, additional steps he or she may take, and Equifax's procedures used to reinvestigate the dispute. UMF 22–23.

Years ago, on an unspecified date, Shepard and his former wife divorced. Shepard Decl., ECF No. 48-1, ¶ 2. In late 2015, Shepard closed an AT&T Wireless account, UMF 26, and the outstanding AT&T bill was sent to his ex-wife and remained unpaid, Shepard Decl. ¶ 2. In May 2016, the AT&T account was assigned to DCI, a debt collector, with a $225 outstanding balance. UMF 27-28; *see* ECF No. 48-4 (letter from DCI identifying DCI as "a debt collector"). DCI then reported the account to Equifax as an unpaid account in collections and Equifax reported the account in Shepard's credit report. UMF 27–28. Shepard first became aware of the bill when it was reported on his credit report, and he then paid the entire balance on August 9, 2016. UMF 33; Shepard Decl. ¶¶ 2–3; *see* Pl.'s Ex. 1, ECF No. 48-3 (AT&T Wireless statement reflecting Aug. 9, 2016 payment of $225). Nonetheless, Shepard's credit report prepared by Equifax continued to report the AT&T Wireless account as a "[c]ollections" account with an "unpaid" $225 balance, though the reports noted Shepard disputed the information. Shepard Decl. ¶ 4; Pl.'s Ex. 6, ECF No. 48-8 at 50[2] (May 25, 2017 Equifax report); Pl.'s Ex. 7, ECF No. 48-9 at 5 (May 25, 2017 three credit bureau report).

Over the next year, Shepard made multiple unsuccessful attempts to have the correct $0 balance reflected on his Equifax report, including submitting ten disputes to Equifax, making multiple phone calls to DCI, AT&T and Equifax, and submitting two disputes to the Consumer Financial Protection Bureau ("CFPB"). Those disputes, as relevant here, are briefly summarized below.

On July 8, 2016, Shepard filed his first dispute with Equifax, using Equifax's online dispute system. UMF 35. Shepard represented the account "was paid to ATT when the account was closed" and requested Equifax verify its information. UMF 35–38; Pl.'s Ex. 8, ECF No. 48-10. Equifax contacted DCI by ACDV that same day, and six days later, DCI employee Kylee Nettles verified the $225 balance. DF 39–40. DCI added a note to the account indicating Shepard

---

[2] The court's citations to the parties' briefs and exhibits refer to ECF page numbers, not internal pagination.

3

disputed the information reported and Equifax provided Shepard with the results of the reinvestigation. UMF 41−2.[3]

On September 19, 2016, Shepard submitted a second online dispute to Equifax, again disputing the balance. UMF 43–46. Shepard's dispute report stated: "I paid this account with ATT before it was sent to collections they verified on Sept 15th 2016 [sic] over the phone this collections [sic] should not be on my credit. The balance is 0 and the collection should have never been reported." UMF 46. That day, Equifax again contacted DCI through ACDV, and, eleven days later, DCI employee Madison Hudson verified the $225 balance. UMF 48–49. DCI updated the account to include the comment "account information disputed by consumer" and Equifax sent Shepard its reinvestigation results UMF 50− 51.

Shepard submitted his third online dispute on December 12, 2016, claiming the account was paid in August 2016. UMF 52–54. The dispute was forwarded to DCI through ACDV and DCI employee Casey Burden verified the $225 balance on December 20, 2016. UMF 57.[4]

On December 22, 2016, Shepard submitted a telephonic dispute with Equifax. UMF 60–63. Shepard explained he had contacted DCI and "they said that they will update this information on his file and be deleted [sic] on his credit report . . . ." UMF 62. Shepard filed an online dispute the same day. UMF 68. That day, Equifax forwarded both of Shepard's December 22, 2016 disputes to DCI through ACDV. UMF 64, 71; *see* Pl.'s Ex. 12, ECF No. 48-14; Pl.'s Ex. 13, ECF No. 48-15.

On December 28, 2016, DCI employee Courtney Bryant submitted to Equifax an automated universal data form ("AUD") report, marked "AUD Control#: 82402320," which indicated Shepard's AT&T account had "0" balance. Pl.'s Ex. 19, ECF No. 48-21; *see also* Pl.'s Ex. 25, ECF No. 48-27, at 3 (Equifax designee Pamela Smith testimony explaining an AUD "is one way that [a furnisher] can update [a consumer's] account information" with a CRA). The next day,

---

[3] For every reinvestigation identified hereafter, DCI added a note indicating Shepard disputed the reported information and Equifax sent Shepard the results of each reinvestigation.

[4] Plaintiff's responses to defendant's statement of undisputed facts repeats paragraph 57 twice. Here, the court cites both paragraphs plaintiff identified as 57.

4

on December 29, 2016, DCI employee Courtney Bryant verified the $225 balance in responding to the ACDV on Shepard's December 22, 2016 telephonic dispute and, separately, the ACDV concerning Shepard's December 22, 2016 online dispute. UMF 65, 72.

On January 12, 2017, Shepard submitted another online dispute to Equifax. UMF 74; *see* Pl.'s Ex. 14, ECF No. 48-16. He attached a copy of an email[5] from DCI stating DCI "requested a credit report deletion for this matter on your behalf," and providing confirmation number 82402320. UMF 76; Pl.'s Ex. 14 at 4. The number 82402320 is also the "AUD Control #" in the December 28, 2016 AUD that DCI employee Courtney Bryant submitted to Equifax. *See* Pl.'s Ex. 19. Equifax contacted DCI through ACDV and Courtney Bryant verified the balance on January 16, 2017. UMF 77–78.

Shepard submitted another online dispute a week later, on January 19, 2017, attaching a January 19, 2017 letter from DCI to Shepard advising the account was "paid in full," but noting the letter would be invalid if the payment was returned. UMF 81, 83; Pl.'s Ex. 15, ECF No. 48-17. Equifax contacted DCI through ACDV, and DCI employee Elaine Brantley verified the $255 balance as outstanding. UMF 84–85. Also on January 19, 2017, Shepard submitted a dispute by facsimile to Equifax, attaching the same letter from DCI. UMF 88–89; Pl.'s Ex. 16, ECF No. 48-18. DCI employee, Leesandra Arocho, verified the $225 balance through ACDV. UMF 91–92.

On January 26, 2017, DCI submitted a second AUD report to Equifax, reflecting a "0" balance on the AT&T account. Pl.'s Ex. 20, ECF No. 48-22.

On February 7, 2017, Shepard submitted another dispute, this time by mail, again attaching DCI's January 19, 2017 letter and an AT&T statement showing a "$0.00" balance. UMF 95–96; Pl.'s Ex. 17, ECF No. 48-19. In response to Equifax's ACDV, DCI employee Leesandra Arocho verified the $225 balance. UMF 98–99.

On March 17, 2017, DCI submitted its third AUD report to Equifax, again reporting a "0" balance on the AT&T account. Pl.'s Ex. 21, ECF No. 48-23. On May 17, 2017, DCI sent a

---

[5] The date of this email is illegible in both parties' exhibits, though it responds to an earlier email from Shepard dated December 28, 2016.

5

letter to Shepard stating the "account has been paid in full and [DCI] will no longer be servicing this account." Pl.'s Ex. 3, ECF No. 48-5. DCI further stated it "ha[d] submitted a trade line update as paid to the credit reporting agencies" and provided AUD confirmation number 83510211.[6] *Id.* On May 24, 2017, Shepard submitted a new dispute to Equifax by telephone. UMF 102. In response, DCI employee Elaine Brantley verified the balance through ACDV. UMF 105–06; Pl.'s Ex. 18, ECF No. 48-20.

On May 26, 2017, Shepard filed the instant suit. ECF No. 1. In September 2017, Equifax removed the AT&T account from Shepard's credit file. DF 32.

II LEGAL STANDARD

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The moving party bears the initial burden of showing the district court "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Then the burden shifts to the non-movant to show "there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . .; or show [] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts"). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247–48.

/////

---

[6] Neither party submitted an actual AUD report bearing this confirmation number.

In deciding summary judgment, the court draws all inferences and views all evidence in the light most favorable to the non-movant. *Matsushita*, 475 U.S. at 587–88. "Where the record taken as a whole could not lead a rational trier of fact to find for the [non-movant], there is no 'genuine issue for trial.'" *Id.* at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). District courts should act "with caution in granting summary judgment," and have authority to "deny summary judgment in a case where there is reason to believe the better course would be to proceed to a full trial." *Anderson*, 477 U.S. at 255. A trial may be necessary "if the judge has doubt as to the wisdom of terminating the case before trial," *Gen. Signal Corp. v. MCI Telecomms. Corp.*, 66 F.3d 1500, 1507 (9th Cir. 1995) (quoting *Black v. J.I. Case Co.*, 22 F.3d 568, 572 (5th Cir. 1994)), "even in the absence of a factual dispute[,]" *Rheumatology Diagnostics Lab., Inc v. Aetna, Inc.*, No. 12-05847, 2015 WL 3826713, at *4 (N.D. Cal. June 19, 2015) (quoting *Black*, 22 F.3d at 572).

III. DISCUSSION

    A. Reasonable Preparation Procedures

Under the FCRA's reasonable procedures provision, a CRA preparing a consumer report "shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 755 (9th Cir. 2018) (quoting 15 U.S.C. § 1681e(b)) (footnote omitted). "Liability under this reasonable procedures provision is predicated on the reasonableness of the credit reporting agency's procedures in obtaining credit information." *Id.* (internal quotation marks omitted) (quoting *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995)). A CRA is not liable for erroneous reports if it can demonstrate it followed reasonable procedures to assure maximum accuracy when preparing the credit report. *Guimond*, 45 F.3d at 1333. But "the reasonableness of a [CRA's] procedures is 'normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question.'" *Shaw*, 891 F.3d at 755 (quoting *Cortez v. Trans Union, LLC*, 617 F.3d 688, 709 (3d Cir. 2010)); *Guimond*, 45 F.3d at 1333 ("The reasonableness of the procedures and whether the agency followed them will be jury questions in the overwhelming majority of cases.").

Equifax contends it is entitled to summary judgment because it deemed DCI a reliable source of information based on its "history" with DCI, because Equifax runs "computerized quality checks" on data before adding that data to Equifax's database, and because "Shepard offers no evidence that Equifax has reason to believe that DCI was not a reasonably reliable source of information." Mot., ECF No. 43, at 8–10. As to DCI's reliability, Equifax provides a declaration from its own Legal Support Leader, Celestina Gobin, who states, "DCI is an entity that Equifax has determined to be a reliable source of information based upon the history of their relationship" and "DCI did not report the Account with any other account numbers." Def.'s Ex. O, ECF No. 42-15, at ¶¶ 34-35. This is Equifax's only evidence of DCI's reliability.

On this record, a triable issue of fact remains regarding whether Equifax reasonably believed DCI was a reliable furnisher of information and thus whether Equifax's preparation procedures were reasonable. Shepard's evidence indicates DCI repeatedly submitted conflicting information to Equifax, reporting Shepard's AT&T account had a "0" balance with one report and then verifying the $225 balance as owing with the next. These conflicting reports were sometimes issued only a day apart and sometimes, conceivably at least, by the same DCI representative. *Compare* Pl.'s Ex. 19 at 2 (Dec. 28, 2016 DCI AUD report authorized by "Courtney Bryant" reflecting a zero balance for the AT&T account), *with* Pl.'s Ex. 12 (Dec. 29, 2016 ACDV response from "Courtney Bryant" verifying $225 balance still owed). Because Equifax omitted any reference to the AUDs in its opening brief, it addresses them only in reply, and unpersuasively at that, arguing it is "legally entitled to rely on DCI's reporting" and could not "have known which of the conflicting information reported to Equifax was accurate" because it is not obligated to "privileg[e] the AUDs over the ACDV emails." Reply at 5. The mere fact that Equifax repeatedly received conflicting information that required it to privilege some DCI information over other conflicting DCI information suggests Equifax had reason to doubt DCI's reliability.

Notably, all evidence of DCI's unreliability is drawn from Equifax's reinvestigations, which Shepard contends violated 15 U.S.C. § 1681i(a)(1)(A), discussed below. In persuasive decisions, courts have observed that claims challenging a CRA's reasonable reporting procedures under 15 U.S.C. § 1681e(b) differ from claims challenging a CRA's reasonable

8

reinvestigation procedures under 15 U.S.C. § 1681i(a)(1)(A). *See, e.g.*, *Grigoryan v. Experian Info. Sols., Inc.*, 84 F. Supp. 3d 1044, 1069–71 (C.D. Cal. 2014). Because the latter concerns only whether the CRA used reasonable procedures in obtaining credit information, courts also have found "evidence of inadequacies in [a CRA's] reinvestigation procedures under § 1681i . . . is not probative of the fact that [a CRA] ha[s] violated § 1681e(b) . . . ." *Id.* (granting summary judgment on reasonable preparation claim because plaintiff "failed to adduce any evidence that [furnishers] are not reputable sources" despite finding a triable issue of fact as to CRA's reinvestigation procedures).

Here, however, Equifax argues its procedures are reasonable in part because DCI is a reliable reporter, relying only on vague and conclusory references to its "history" with DCI, while evidence before the court supports an inference that Equifax could or should not reasonably have considered DCI a reliable source. *Cf. id.* at 1068 ("Grigoryan adduces no evidence, and does not argue, that defendants had reason to believe that BOA, Sequoia, and CMI were not reputable sources of information"). Moreover, as Shepard notes, Equifax produced at least two credit reports after receiving the conflicting information from DCI. Opp'n, ECF No. 48, at 9–10. In light of this evidence, and observing that the reasonableness of a CRA's procedures is generally a question reserved to the trier of fact, the court cannot conclude Equifax is entitled to judgment as a matter of law on this claim. In sum, a reasonable jury could conclude Equifax did not "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." *See Shaw*, 891 F.3d at 755. The motion is DENIED in this respect.

B.  Reasonable Reinvestigation

When a consumer disputes the accuracy of his or her file with the CRA, the CRA "shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . ." 15 U.S.C. § 1681i(a)(1)(A). Whether a CRA's reinvestigation was reasonable depends on the circumstances of the case. *Shaw*, 891 F.3d at 756 (citing *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1160 (9th Cir. 2009)).

/////

The record before the court precludes summary judgment on this claim. Despite evidence suggesting DCI repeatedly submitted conflicting information to Equifax, nothing in the record indicates Equifax's procedures were equipped to recognize much less respond to these discrepancies when Equifax reinvestigated Shepard's disputes. For example, Shepard expressly alerted Equifax to an AUD report from DCI confirming the "0" balance, but Equifax either did not review this report or chose to believe DCI's conflicting verification of the $225 balance. *Compare* Pl.'s Ex. 14 at 4 (Jan. 12, 2017 dispute with attached DCI email confirming it requested Equifax indicate a "0" balance on the account and providing report confirmation number 82402320), *with* Pl.'s Ex. 19, ECF No. 48-21 at 2 (Dec. 28, 2016 DCI AUD with "AUD Control # 82402320"), *and* Pl.'s Ex. 14 at 2 (Jan. 16, 2017 ACDV from DCI verifying $225 owing in response to Shepard's Jan. 12, 2017 dispute). In fact, an Equifax representative testified that Equifax employees conducting reinvestigations do not have access to AUDs. Pl.'s Ex. 25 at 9. That same representative testified that AUDs are "one way that [a furnisher] can update [a consumer's] account information," *id.* at 3, and it is not clear to the court how reinvestigation procedures precluding the ability to consult AUDs can be considered reasonable.

Equifax appears to argue it need not consult AUDs to conduct a reasonable reinvestigation, or employ any method outside the ACDV process, because that process is "far more thorough and reliable" than any alternative. Reply at 6. But other courts have found, "where a CRA is affirmatively on notice that information received from a creditor may be suspect, it is unreasonable as a matter of law for the agency to simply verify the creditor's information through the ACDV process without additional investigation." *See Bradshaw v. BAC Home Loans Servicing*, LP, 816 F. Supp. 2d 1066, 1073–74 (D. Or. 2011) (collecting cases); *see also Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 430 (4th Cir. 2004) ("[T]he plain meaning of 'investigation' clearly requires some degree of careful inquiry by creditors."). *Cf. Wood v. Credit One Bank*, 277 F. Supp. 3d 821, 851 (E.D. Va. 2017) (granting plaintiff summary judgment where evidence showed CRA conducted only "cursory" review of disputes).

With evidence supporting an inference that Equifax's reinvestigation procedures were unable to account for AUDs, and gave weight to information Equifax should have known was

unreliable, there is a triable issue of fact as to the reasonableness of those procedures. Equifax's motion is DENIED in this respect as well.

    C.    Credit Denials

The FCRA permits a plaintiff to recover actual damages for a CRA's negligent non-compliance with FCRA provisions. 15 U.S.C. § 1681o(a)(1). Denial of credit is not a prerequisite to recovery under this FCRA provision, and a consumer may recover actual damages for emotional distress and humiliation. *Guimond*, 45 F.3d at 1333. Further, "absent some authority stating that a denial of credit, and not mere credit inaccuracies, are necessary for recovery under FCRA, the issue of causation should [] be[] left for a fact finder to determine." *Id.* Nonetheless, some courts have held that "to create an issue of fact as to causation, a plaintiff must produce evidence that the alleged inaccurate entry was a 'substantial factor' in the denial of credit, adverse credit, or other harm." *See Bradshaw*, 816 F. Supp. 2d at 1075.

Shepard states under penalty of perjury that he "applied for and was denied credit with Chase during Equifax's inaccurate reporting of the [AT&T] Account" and "Chase informed [him] that [he] was denied due to an active derogatory account on [his] credit." Shepard Decl. ¶ 11. The AT&T account was the only account in collections showing on his credit report. *Id.* Shepard also states he had been saving to purchase a home and "was ready to apply for a home loan" but was told by "a mortgage broker who explicitly referenced the [AT&T] Account [that] . . . [he] would not be approved for a home loan until the AT&T account was updated to 'paid.'" *Id.* ¶ 12.[7]

The parties submit dueling expert reports on whether Shepard's denial of credit can be attributed to the allegedly erroneous balance. *Compare* Mot. at 14–15 (summarizing Equifax expert's opinion that Equifax accurately reported the AT&T account was in collections and "[w]hether a collection account shows a balance or not has no effect on a consumer's ability to obtain credit," and arguing Shepard was likely denied credit because of other derogatory accounts in his credit history), *with* Opp'n at 14 (summarizing Shepard expert's opinion lenders often use automated decision making in credit decisions and will automatically deny credit to applicants with

---

[7] Shepard also seeks damages for emotional distress, but Equifax clarified it does not seek summary judgment on this portion of Shepard's claim. *See* Reply at 8.

collection accounts and unpaid balances more than 120 days past due). Equifax also contends Shepard has no admissible evidence he was denied credit by Chase and cannot rely on his speculation he would have been denied a mortgage loan to establish damages. Mot. at 16–17. While Shepard's ability ultimately to establish he was denied credit by Chase and was precluded from obtaining a home loan because of Equifax's alleged misconduct is far from assured, these are disputed issues and the court declines to decide them prematurely. The motion is DENIED on this claim as well.

### D. Willful Violation of FCRA

Certain damages are available under the FCRA only if the plaintiff shows the CRA willfully failed to comply with the statute. *See* 15 U.S.C. § 1681n(a); *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56–57 (2007). FCRA violations committed in reckless disregard of statutory duties satisfy the willful violation requirement. *Safeco*, 551 U.S. at 57. Reckless disregard "conduct violating an objective standard," satisfied when a defendant's action is both "a violation under a reasonable reading of the statute's terms, [and] shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 68–69.

Citing its reinvestigation of each of Shepard's disputes, Equifax argues Shepard cannot meet the willfulness showing necessary to sustain his claim. Mot. at 18. For the reasons discussed above, however, a reasonable juror could find Shepard's allegations and supporting evidence, if accepted, constitute willful violations of the FCRA. The motion on this claim too is DENIED.

## IV. CONCLUSION

For reasons explained above, defendant's motion is DENIED, resolving ECF No. 41.

/////
/////
/////
/////

This matter is set for a final pretrial conference on May 31, 2019 at 10:00 a.m. The parties shall file the Joint Final Pretrial Conference Statement as required by the court by fourteen (14) days before.

IT IS SO ORDERED.

DATED: April 9, 2019.

_____
UNITED STATES DISTRICT JUDGE