**SINNETT LAW, APC.**
Wayne A. Sinnett (SBN: 302987)
ws@sinlegal.com
Crystal T. Innabi (SBN: 316434)
ci@sinlegal.com
770 L Street, Suite 950
Sacramento, CA 95814
Tel: (619) 752-0703
Fax: (619) 330-2120

*Attorneys for Plaintiff*

J. Anthony Love, PHV
N. Charles Campbell, II , PHV
King and Spalding, LLP.
1180 Peacetree Street NE
Atlanta, GA 30309
404-572-4600
Fax: 404-572-5100
Email: tlove@kslaw.com
Email: ccampbell@kslaw.com
*Attorneys for Defendant EQUIFAX
INFORMATION SERVICES LLC*

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CHRISTOPHER SHEPARD,** an individual, <br><br> Plaintiff, <br><br> v. <br><br><br> **EQUIFAX INFORMATION SERVICES, LLC.;** and **DIVERSIFIED CONSULTANTS, INC.,** <br><br> Defendants. | **Case No.:** 2:17-CV-01118-KJM-CKD <br><br> **JOINT PRETRIAL STATEMENT** <br><br> Judge: Hon. Kimberly J. Mueller <br> Mag. Judge: Hon. Carolyn K. Delaney <br><br> **FINAL PRETRIAL CONFERENCE:** <br> Date: May 31, 2019 <br> Time: 10:00 AM <br> Location: Courtroom 3 |

Plaintiff, CHRISTOPHER SHEPARD ("Plaintiff"), and Defendant, EQUIFAX INFORMATION SERVICES, LLC. ("EQUIFAX" or "Defendant"), jointly submit this Pretrial Statement in accordance with Local Rule 281, Fed. R. Civ. P. Rule 16 and the Court's order.

## 1. JURISDICTION - VENUE

The parties agree that this Court has jurisdiction pursuant to 28 U.S.C. § 1331 for Plaintiff's claims under 15 U.S.C. § 1681 *et seq.*

The parties agree that venue is proper pursuant to 28 U.S.C. § 1391 as: (i) Plaintiff resides in the County of Sacramento, State of California, which is within this judicial district; and (ii) the conduct complained of herein occurred within this judicial district.

## 2. JURY – NON-JURY

The parties have requested a jury trial on all issues. The Parties request that eight (8) jurors to be impaneled to try the case.

Plaintiff estimates that trial will take 5 days.

Equifax estimates the trial will take 3-4 days.

## 3. UNDISPUTED FACTS

1. Plaintiff, CHRISTOPHER SHEPARD is a "consumer" as that term is defined by the Fair Credit Reporting Act or FCRA.[1]

2. EQUIFAX is a consumer reporting agency as defined by the FCRA.[2]

3. Mr. Shepard opened an AT&T Wireless account for a cell phone.

4. The Debt was placed with a debt collector, DIVERSIFIED CONSULTANTS, INC. ("DIVERSIFIED"), who later reported it on Plaintiff's credit.

5. Mr. Shepard paid the Account balance of $225 in August 2016, after he saw it appear as a DCI collection account in his credit file.

6. On January 12, 2017, Mr. Shepard submitted an online dispute to Equifax

---

[1] 15 U.S.C. § 1681a(c).
[2] 15 U.S.C. § 1681a(f).

regarding the Account

7.  Mr. Shepard did not add any comments but did provide copy of an email [from Diversified].

8.  On January 19, 2017, Mr. Shepard submitted an online dispute to Equifax regarding the Account.

9.  Mr. Shepard also added the comment 'letter attached from DCI for proof of 0 balance' and provided a document, a January 19, 2017 letter purportedly from DCI that stated, "The above mentioned account has been paid in full. Upon return of payment for any reason this letter no longer be valid"

10. On January 19, 2017, Mr. Shepard contacted Equifax by facsimile to submit a dispute regarding the Account.

11. Mr. Shepard also provided a cover letter and the same January 19, 2017 letter purportedly from DCI.

12. On February 7, 2017, Mr. Shepard contacted Equifax by mail to submit a dispute regarding the Account.

13. Mr. Shepard provided a cover letter, an AT&T Wireless Statement, and the same January 19, 2017 letter purportedly from DCI.

14. On May 24, 2017, Mr. Shepard contacted Equifax by telephone to submit a dispute regarding the Account.

15. Equifax received three (3) AUD's from Diversified relating to the AT&T debt. [EIS 151-153].

16. Plaintiff asserts that Equifax has violated the Fair Credit Reporting Act by failing to conduct a reasonable investigation of his nine (9) disputes, by failing to delete inaccurate or unverifiable information in Plaintiff's credit report and by preparing credit reports which inaccurately listed the debt with an unpaid balance.

17. Equifax denies liability and denies that it violated the Fair Credit Reporting Act.

18. Without waiving EQUIFAX's objections, including to the admissibility and use of the information, Equifax Information Services LLC states that for purposes of this case only, its operating revenue is set forth on page 107 of the Equifax Inc. 2018 10-K filed with the Securities & Exchange Commission, reflected as the operating revenue of U.S. Information Solutions; that amount is 1.262 billion.

# 4. DISPUTED FACTUAL ISSUES

**Plaintiff's Position:**

1. Whether EQUIFAX continued to report the Account as an "unpaid" collection account with an unpaid balance until September 2017.

2. Whether During this time EQUIFAX prepared credit reports which showed the Debt as an "unpaid" collection account with a balance of $225.

3. Whether EQUIFAX violated 15 U.S.C §1681i by failing to conduct a reasonable reinvestigation with respect to the Plaintiff's credit disputes.

4. Whether EQUIFAX violated 15 U.S.C §1681i by failing to delete inaccurate or unverifiable information in Plaintiff's credit report.

5. Whether EQUIFAX violated 15 U.S.C. § 1681e(b) by failing to maintain reasonable procedures to assure maximum possible accuracy of the information contained in Plaintiff's credit reports.

6. Whether EQUIFAX's conduct was negligent.

7. Whether EQUIFAX's conduct was willful.

8. Whether EQUIFAX's conduct caused Plaintiff damages including: credit denials, credit worthiness, credit capacity, ability to secure credit, emotional distress, actual damages, statutory damages and punitive damages.

**Equifax's Position:**

1. Whether EQUIFAX's conduct caused Plaintiff damages. including: credit denials, credit worthiness, credit capacity, ability to secure credit, emotional distress, actual damages, statutory damages and punitive damages.

# 5. DISPUTED EVIDENTIARY ISSUES

**Plaintiff's List of Disputed Evidentiary Issues:**

Plaintiff anticipates bringing motions in limine on the following issues:

1. Plaintiff will move to exclude Defendant's person(s) most knowledgeable from offering expert opinions;

2. Plaintiff will move to include the following as undisputed facts, and move to exclude any evidence to the contrary:

   a. That Plaintiff paid the Debt in full on August 9, 2016;

   b. That between July of 2016 and May of 2017, Plaintiff disputed the Debt nine (9) times with EQUIFAX and summitted two (2) disputes to the Consumer Financial Protection Bureau ("CFPB").

   c. That DIVERSIFIED sent Plaintiff a letter stating that the balance on the Debt was zero dollars, and the Debt was paid in full;

   d. That EQUIFAX received a copy of the DIVERSIFIED letter stating the balance on the Debt was zero dollars, and the Debt was paid in full.

   e. That DIVERSIFIED submitted three (3) written requests to EQUIFAX called AUD's which specifically requested that EQUIFAX update the Debt to reflect that it had been paid in full and had a zero balance.

3. Plaintiff will move to exclude any reference to prior settlements in this case;

4. Plaintiff will move to exclude all non-retained and non-designated experts;

5. Plaintiff will move to exclude or limit the testimony of any asserted expert under FRE 701-03, and Daubert/Frye, and to exclude all evidence and simulations not disclosed during discovery;

6. Plaintiff will move to exclude demonstrative evidence and other visual aids such as enlarged illustrations, enlarged photographs, and videotapes, until after the adverse party has disclosed them outside the presence of the jury;

7.   Plaintiff will move to exclude any reference to attorney's fees to the jury;

8.   Plaintiff will move to exclude any reference his brother, Nicholas R. Shepard, who is an attorney licensed to practice law in California.

9.   Plaintiff will move to exclude any witnesses or evidence not previously produced in discovery.

**Equifax's List of Disputed Evidentiary Issues:**

1.   Equifax intends to file a *Daubert* motion to strike Plaintiff's expert.

2.   Equifax intends to file a motion in limine to exclude evidence of net worth and/or financial standing of Equifax.

3.   Equifax intends to file a motion in limine to exclude all hearsay evidence.

## 6. SPECIAL FACTUAL INFORMATION IN CERTAIN ACTIONS

This is not an eminent domain action, a patent action, a contract action, nor a tort action, therefore the parties do not believe this section is applicable to this case and no special factual information in accordance with Local Rule 281(b)(6)(iv) need be added.

## 7. RELIEF SOUGHT

**Plaintiff's Position:**

As a result of each and every willful violation of the FCRA, Plaintiff is seeking actual damages in an amount to be determined at trial, or statutory damages of up to $1,000.00, and punitive damages in an amount to be determined at trial. As a result of each and every negligent violation of the FCRA, Plaintiff is seeking actual damages in an amount to be determined at trial. Plaintiff is also seeking reasonable attorney's fees and costs for all negligent and/or willful violations.

**Equifax's Position:**

Equifax denies that Plaintiff has suffered any credit denials or other damages as the proximate result of any alleged FCRA violation by Equifax. Equifax denies that it willfully violated the FCRA and, therefore, denies that

Plaintiff is entitled to punitive damages and/or statutory damages.  Equifax denies that Plaintiff is entitled to his attorney's fees and costs unless he is the prevailing party at trial and, even then, Equifax reserves all rights to object to the reasonableness of such fees and costs

# 8. POINTS OF LAW

**Plaintiff's Position:**

1. **Whether EQUIFAX violated 15 U.S.C §1681i by failing to conduct a reasonable reinvestigation with respect to the Plaintiff's credit disputes.**

   a. When a consumer disputes the accuracy of his or her file with the CRA, the CRA "shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file...." 15 U.S.C. § 1681i(a)(1)(A). Whether a CRA's reinvestigation was reasonable depends on the circumstances of the case. *See Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 756 (9th Cir. 2018) (citing *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1160 (9th Cir. 2009)).

2. **Whether EQUIFAX violated 15 U.S.C §1681i by failing to delete inaccurate or unverifiable information in Plaintiff's credit reports following Plaintiff's disputes.**

   a. "[W]here a CRA is affirmatively on notice that information received from a creditor may be suspect, it is unreasonable as a matter of law for the agency to simply verify the creditor's information through the ACDV process without additional investigation." *See Bradshaw v. BAC Home Loans Servicing, LP,* 816 F. Supp. 2d 1066, 1073– 74 (D. Or. 2011) (collecting cases); *see also Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 430 (4th Cir. 2004) ("[T]he plain meaning of

'investigation' clearly requires some degree of careful inquiry by creditors."). *Cf. Wood v. Credit One Bank*, 277 F. Supp. 3d 821, 851 (E.D. Va. 2017) (granting plaintiff summary judgment where evidence showed CRA conducted only "cursory" review of disputes).

3.  **Whether EQUIFAX violated 15 U.S.C. § 1681e(b) by failing to maintain reasonable procedures to assure maximum possible accuracy of the information contained in Plaintiff's credit reports.**

    a.  15 U.S.C. § 1681e(b).

    b.  "Liability under this reasonable procedures provision is predicated on the reasonableness of the credit reporting agency's procedures in obtaining credit information." *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 755 (9th Cir. 2018) (quoting *Guimond v. Trans Union Credit Info.* Co., 45 F.3d 1329, 1333 (9th Cir. 1995)).

    c.  A CRA follows reasonable procedures if the CRA relies on information from a reasonably reputable source unless the CRA has been put on some kind of notice of systemic problems with the accuracy of its reports or the "information furnished appears implausible or inconsistent". *Commentary on the Fair Credit Reporting Act,* 16 C.F.R. pt. 600 app. A CRA should go "beyond merely verifying the accuracy of its initial source of information if, for example, the consumer has alerted the reporting agency to the possibility that the source may be unreliable or the reporting agency itself knows or should know that the source is unreliable." *Id.* "It is not reasonable for the CRA to simply verify the accuracy of the initial source of information." *Carlisle v. Nat'l Commercial Servs., Inc.*, No. 1:14-CV-515-TWT-LTW, 2016 WL 4544368, at *9 (N.D. Ga. July 22, 2016), report and recommendation adopted, No. 1:14-CV-515-TWT, 2016 WL 4532219 (N.D. Ga. Aug. 29, 2016).

d. Sole reliance on credit information from sources of information that Defendant has determined is reliable is explicitly unreasonable. *See Carlisle*, No. 1:14-CV-515-TWT-LTW, 2016 WL 4544368; *Edeh v. Equifax Info. Sys.*, 974 F. Supp. 2d 1220, 1225-28, 1237-38 (D. Minn. Sept. 24, 2013) (concluding that even though Equifax verified the account balance with furnisher, Equifax's investigation was not reasonable because Equifax did not provide full information to furnisher about the nature of the dispute including letters from furnisher to consumer stating that the consumer's balance was paid in full and information about the consumer's check paying off the balance); *Stevens v. Genesis Credit Mgmt., LLC,* No. 6:15-CV-01898-JR, 2017 WL 2695335, at *5 (D. Or. May 2, 2017), report and recommendation adopted, No. 6:15-CV-01898-JR, 2017 WL 2701841 (D. Or. June 22, 2017).

e. "Plaintiff can establish a prima facie case under *Guimond* simply with evidence of an inaccuracy. Therefore, Plaintiff is not required, absent any evidence from Equifax, to put forth direct evidence of Equifax's unreasonable procedures…" *Wilson v. Equifax Info. Servs., No.* CV0504635DDPCTX, 2006 WL 8434303, at *8 (C.D. Cal. Oct. 25, 2006). In other words, "*Guimond* allows a jury to infer that reasonable procedures were not followed if the only evidence presented by either side is the inaccuracy itself." *Id.*

4. **Whether EQUIFAX's conduct was negligent.**

a. "The FCRA provides for compensation in the form of actual damages and attorneys' fees if a consumer reporting agency negligently fails to comply with any provision of FCRA." *Guimond*, 45 F.3d 1329, 1332 (citing 15 U.S.C. § 1681o).

b. The standard of conduct required to avoid a negligence determination under FCRA is that of a reasonably prudent person under similar circumstances. *Taylor v. First Advantage Background Servs. Corp.*, 207 F. Supp. 3d 1095, 1101 (N.D. Cal. 2016);

5. __Whether EQUIFAX's conduct was willful.__

a. A showing of malice or evil motive is not required to prove willfulness under the Fair Credit Reporting Act (FCRA); rather, the plaintiff must only show that the consumer reporting agency knowingly and intentionally committed an act in conscious disregard for the rights of the consumer. 15 U.S.C §§ 1681n, 1681o. *Dalton v. Capital Associated Industries, Inc.*, 257 F.3d 409 (4th Cir. 2001).

b. Willfulness under the FCRA includes recklessness defined as "an unjustifiably high risk of harm that his either known or so obvious that it should be known" *Safeco Ins. Co. of Am.*, 551 U.S. 47, 49, 56-57 127 S. Ct. 2201, 2204. Willfulness under the FCRA is again a jury issue. *Price*, 737 F. Supp. 2d 281, 289 ("Whether the Defendant's conduct violates this objective standard is a fact-bound inquiry that should be answered by a jury").

6. __Whether EQUIFAX's conduct was the cause of Plaintiff's damages.__

a. Some courts have held that "to create an issue of fact as to causation, a plaintiff must produce evidence that the alleged inaccurate entry was a 'substantial factor' in the denial of credit, adverse credit, or other harm." *Bradshaw v. BAC Home Loans Servicing, LP*, 816 F. Supp. 2d 1066, 1075 (D. Or. 2011); *Rothery v. Trans Union, LLC*, No. CV-04-312-ST, 2006 WL 1720498, at *9 (D. Or. Apr. 6, 2006), report and recommendation adopted, No. 04-CV-312-ST, 2006 WL 1720497 (D.

Or. June 14, 2006) (citing *Philbin,* 101 F3d at 968) (a reasonable jury could infer that the loan denial the plaintiff testified about was denied due to the inaccurate adverse information supplied by defendant).

b.  Where plaintiff presents some evidence that certain lenders consider unpaid judgments to be important in evaluating credit worthiness, a reasonable jury could infer that the incorrect legal judgment on Plaintiff's credit report was a substantial factor in the denial of credit. *Wilson v. Equifax Info. Servs*., No. CV0504635DDPCTX, 2006 WL 8434303, at *8 (C.D. Cal. Oct. 25, 2006).

c.  Credit reports are notoriously complicated, as are decisions to issue or not issue credit; and it is clear that certain entries will be more likely than others to negatively impact one's credit rating. The Court does not presume to understand the intricacies of credit reports. *Fregoso v. Wells Fargo Dealer Servs., Inc.*, No. CV 11-10089 SJO AGRX, 2012 WL 4903291, at *7 (C.D. Cal. Oct. 16, 2012).

7.  **Whether, as a result of EQUIFAX's conduct, Plaintiff has suffered damages in the form of emotional distress.**

a.  Denial of credit is not a prerequisite to recovery under this FCRA provision, and a consumer may recover actual damages for emotional distress and humiliation. *Guimond*, 45 F.3d 1329, at 1333. "[P]laintiff may prove a claim for actual damages by showing … emotional harm or humiliation, even where credit was not denied." *Banneck v. HSBC Bank USA, N.A.*, No. 15-CV-02250-HSG, 2016 WL 3383960, at *8 (N.D. Cal. June 20, 2016).

b.  "The Ninth Circuit does require objective evidence of emotional distress" under the FCRA. *Grigoryan*, 84 F. Supp. 3d 1044 (testimony alone is sufficient to support an award of emotional distress damages);

*Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1040 (9th Cir. 2003) ("Zhang's testimony alone is enough to substantiate the jury's award of emotional distress damages."); *Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495, 502 (4th Cir. 2007) (affirming the district court's ruling that the jury's emotional distress ward was "not an unreasonable conclusion from [the] evidence" because the jury could have found that the defendant's actions "directly led to the mounting frustration and distress that [plaintiff] felt for almost two years"); *Wood*, 277 F. Supp. 3d 821 at 845; *Larson v. Trans Union, LLC.*, 201 F. Supp. 3d 1103 (N.D. Cal. 2016) (consumer sufficiently alleged a concrete injury, by alleging that he suffered emotional distress, and employers' and creditors' uncertainty and confusion could harm consumer's employment and credit prospects); *Taylor v. First Advantage Background Servs. Corp*, 207 F. Supp. 3d 1095, 1102–03 (N.D. Cal. 2016); *Johnson v. Hale*, 13 F.3d 1351, 1352–53 (9th Cir.1994) (emotional distress can be "established by testimony or inferred from the circumstances, whether or not plaintiffs submit evidence of economic loss or mental or physical symptoms.").

8. **Whether Plaintiff has spent several hours and suffered damages loss in attempting to correct EQUIFAX's inaccurate and derogatory reporting without success.**

   a. *Brim v. Midland Credit Management, Inc.*, 795 F. Supp. 2d 1255 (N.D. Ala. 2011) (Actual damages in a FCRA suit was not excessive where there was evidence that the consumer attempted numerous times across numerous years to have the debt purchaser correct its records, the consumer testified regarding the amount of time he had to devote to his credit, all because of the debt purchaser's actions or inactions, and the debt purchaser's sole effort after five separate notifications

from credit bureaus that the consumer disputed the debt was to check its records against its very own records.)

9. **Whether Plaintiff was denied credit as a result of EQUIFAX's inaccurate reporting.**

    a. In regards to proof of denial of credit as a result of Defendant's actions, Plaintiff does not need to produce actual denial letters, his deposition testimony and sworn affidavit are sufficient. *See Wood,* 277 F. Supp. 3d 821; s*ee also Rothery v. Trans Union, LLC,* No. CV-04-312-ST, 2006 WL 1720498, at *10 (D. Or. Apr. 6, 2006), report and recommendation adopted, No. 04-CV-312-ST, 2006 WL 1720497 (D. Or. June 14, 2006) ("According to her own subjective account and the declaration of her mother, [plaintiff] has presented evidence of … damage to [her] reputation and loss of opportunities as a result of the reporting of false information, her efforts to dispute the false information, and the aftermath of her failed efforts.); *See also Brim v. Midland Credit Management, Inc*., 795 F. Supp. 2d 1255 (N.D. Ala. 2011).

10. **Whether Plaintiff was unable to secure a home loan as a result of EQUIFAX's inaccurate reporting.**

    a. In regards to proof of denial of credit as a result of Defendant's actions, Plaintiff does not need to produce actual denial letters, his deposition testimony and sworn affidavit are sufficient. *See Wood,* 277 F. Supp. 3d 821; s*ee also Rothery v. Trans Union, LLC,* No. CV-04-312-ST, 2006 WL 1720498, at *10 (D. Or. Apr. 6, 2006), report and recommendation adopted, No. 04-CV-312-ST, 2006 WL 1720497 (D. Or. June 14, 2006) ("According to her own subjective account and the declaration of her mother, [plaintiff] has presented evidence of …

damage to [her] reputation and loss of opportunities as a result of the reporting of false information, her efforts to dispute the false information, and the aftermath of her failed efforts.); *See also Brim v. Midland Credit Management, Inc.*, 795 F. Supp. 2d 1255 (N.D. Ala. 2011).

11. **Whether Plaintiff is entitled to punitive damages?**

   a. The FCRA provides for recovery of punitive damages for a credit reporting agency's willful non-compliance. *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1332 (9th Cir. 1995) (citing 15 U.S.C. § 1681n).

   b. In considering the amount of any punitive damages, consider the degree of reprehensibility of the defendant's conduct, including whether the conduct that harmed the plaintiff was particularly reprehensible because it also caused actual harm or posed a substantial risk of harm to people who are not parties to a case. Model Civil Jury Instructions for the 9th Circuit, Section 5.5 (2018).

   c. In evaluating punitive damages, one must consider, among other things, the wealth of the defendant. *Sornia v. El Centro Elem. Sch. Dist.*, 285 F. App'x 337, 339 (9th Cir. 2008). Courts have allowed discovery as to a defendant's net worth, as well as presentation of this evidence to jurors, because it is relevant to punitive damages. *See, e.g., Reddy v. Nuance Comms., Inc.*, 2015 WL 4648008, at *3 (N.D. Cal. Aug. 5, 2015); *Zuniga v. W. Apartments*, 2014 WL 2599919, at *4 (C.D. Cal. Mar. 25, 2014); More specifically, a defendant's net worth in a credit reporting case is relevant to evaluating whether a punitive damages award is "sufficient to fulfill" its purpose of deterrence. *Todd v. AT&T Corp.,* No. 16CV03357HSGMEJ, 2017 WL 1398271, at *2

(N.D. Cal. Apr. 19, 2017).

**Equifax's Position:**

1. Whether Equifax negligently violated the FCRA.

2. Whether Equifax willfully violated the FCRA.

3. Whether Plaintiff suffered any damages as the result of any alleged FCRA violation by Equifax.

## 9. ABANDONED ISSUES

**Plaintiff's Position:**

Plaintiff has abandoned his claims relating to the first credit dispute on July 8, 2016 dispute. No other claims have been abandoned.

**Equifax's Position:**

Equifax agrees that Plaintiff has abandoned his claims related to the July 8, 2016 dispute, but Equifax reserves the right to introduce evidence of the dispute at trial to explain the history and context of Plaintiff's dispute history.

## 10. WITNESSES

**Plaintiff's Position:**

Plaintiff's Witness List is attached hereto as Exhibit A.

**Equifax's Position:**

Equifax's Witness list is attached hereto as Exhibit B.

## 11. EXHIBITS – SCHEDULES AND SUMMARIES

**Plaintiffs' Position:**

Plaintiff's Exhibit List is attached hereto as Exhibit C.

**Equifax's Position:**

Equifax's Exhibit List is attached hereto as Exhibit B.

## 12. DISCOVERY DOCUMENTS

**Plaintiffs' Position:**

Plaintiff may offer the following discovery documents at trial:

1. **Deposition Transcripts:**

    **a.** Deposition of Pamela Smith, person most knowledgeable for EQUIFAX (4/20/2018);

    **b.** Deposition of Plaintiff, Christopher Shepard (3/28/2018).

**2. <u>Written Discovery:</u>**

    **a.** EQUIFAX's Responses to Plaintiff's Interrogatories (Set One);

    **b.** EQUIFAX's Responses to Plaintiff's Interrogatories (Set Two);

    **c.** EQUIFAX's Responses to Plaintiff's Interrogatories (Set Three);

    **d.** EQUIFAX's Responses to Plaintiff's Requests for Production (Set One);

    **e.** EQUIFAX's Responses to Plaintiff's Requests for Production (Set Two);

    **f.** EQUIFAX's Responses to Plaintiff's Requests for Production (Set Three);

    **g.** EQUIFAX's Responses to Plaintiff's Requests for Admission (Set One);

    **h.** Plaintiff's Responses to EQUIFAX's Requests for Admission (Set One);

    **i.** Plaintiff's Responses to EQUIFAX's Requests for Production (Set One);

    **j.** Plaintiff's Responses to EQUIFAX's Interrogatories (Set One);

    **k.** Plaintiff's Responses to DCI's Interrogatories (Set One);

    **l.** Plaintiff's Responses to DCI's Requests for Production (Set One);

    **m.** DCI's responses to Plaintiff's Requests for Admission (Set One);

    **n.** DCI's responses to Plaintiff's Requests for Admission (Set Two);

    **o.** DCI's responses to Plaintiff's Interrogatories (Set One);

    **p.** DCI's responses to Plaintiff's Interrogatories (Set Two);

    **q.** DCI's supplemental Responses to Plaintiff's Interrogatories (Set One);

**r.** DCI's responses to Plaintiff's Requests for Production (Set One);

**s.** DCI's responses to Plaintiff's Requests for Production (Set Two);

**t.** Any and all call recordings produced in discovery;

**u.** SHEPARD-PLA 000001-000228;

**v.** EIS-SHEPARD-000001-000228;

**w.** DCI 00001-00115.

**3.** **Initial Disclosures**

**a.** Plaintiff's Initial Disclosures and any supplemental disclosures;

**b.** Equifax's Initial Disclosures.

**Equifax's Position:**

Equifax may offer the depositions of Plaintiff and Ms. Smith at trial as well as Plaintiff's responses to Equifax's written discovery and Plaintiff's initial disclosures. Equifax objects to the introduction at trial of any discovery responses from former Defendant DCI.

## 13. FURTHER DISCOVERY OR MOTIONS

**Plaintiff's Position:**

Plaintiff anticipates motions in limine described above. Additionally, Equifax seeks to reopen discovery to serve discovery requests and start taking expert depositions on the eve of trial. This case has been pending for two years. [ECF No. 1]. Plaintiff designated his expert and provided a report in March of 2018 which was over a year ago. [ECF. No. 28]. Equifax has had plenty time to depose Plaintiff's expert but declined to do so.

With respect to compelling disclosure of other settlements, Equifax will first need to reopen discovery, serve discovery requests, and then it can bring a motion to compel (which will be vigorously opposed by the other settling defendant). That process will take months if not a year to complete. Reopening discovery at this stage would cause significant delay and serious prejudice to Plaintiff.

///

**Equifax's Position:**

Equifax intends to file the motions in limine described above. Equifax requests the opportunity to depose Plaintiff's expert before it files its *Daubert* motion. Equifax also intends to file a motion to compel the disclosure of the settlement amount between Plaintiff and DCI and to present that amount to the jury to offset any verdict that may be returned against Equifax.

## 14. STIPULATIONS

**Plaintiff's Position:**

Currently, the Parties have not entered into any stipulations. The Plaintiff is open to stipulations that may streamline the presentation of undisputed evidence at trial, and plan on working on those during trial preparations. For example, charts, documents, etc. that are not disputed and not otherwise subject to objection could be pre-marked and admitted into evidence at the commencement of trial. The Parties anticipate stipulations as to the authenticity of certain documents for trial.

**Equifax's Position:**

Equifax stipulated to an amount for its net worth, but reserves the right to file a motion in limine as to its admissibility.

## 15. AMENDMENTS – DISMISSALS

**Plaintiff's Position:**

Plaintiff's Complaint is the operative pleading, (ECF Dkt. No .1). Defendant Diversified Consultants, Inc. ("DCI") was dismissed from this action on April 27, 2018, (ECF Dkt. No. 40). Plaintiff does not currently anticipate any amendments to pleadings, dismissals, additions or substitutions of parties other than the abandonment of one claim as stated above.

Plaintiff opposes Equifax seeking leave to amend its Answer to include defenses which were ***not*** disclosed in the prior two years this case has been litigated. Plaintiff has not had the opportunity to conduct any discovery of these purported defenses and their inclusion at trial would be highly prejudicial.

**Equifax's Position:**

To the extent the Court may deem it necessary, Equifax will seek leave to amend its Answer to assert the Defense of set-off for the DCI settlement.

## 16. SETTLEMENT NEGOTIATIONS

The parties participated in a VDRP mediation on November 21, 2017. Plaintiff and DIVERSIFIED were able to reach a resolution shortly thereafter. [ECF. No. 26].

After the Court's ruling on EQUIFAX's Summary Judgement Motion the parties worked to coordinate a Settlement Conference before the Hon. Judge Carolyn K. Delaney. The Parties attended the Settlement Conference on April 30, 2019 but we not able to resolve the case. [ECF No. 59].

The Parties have fundamental disagreements about the case and liability. Accordingly, the parties do not believe a further Settlement Conference would resolve the case.

## 17. AGREED STATEMENTS

**Plaintiff's Position:**

The Plaintiff is agreeable to a presentation of some of this case upon an Agreed Statement of Facts. Counsel for the parties will work to see if an agreement can be reached on these issues.

**Equifax's Position:**

Equifax does not believe that it would be appropriate to try the case in whole or in part based on an Agreed Statement of Facts.

## 18. SEPARATE TRIAL OF ISSUES

**Plaintiff's Position:**

Plaintiff does not believe that a separate trial of issues in this case is feasible or advisable.

**Equifax's Position:**

As noted above, Equifax intends to file a motion in limine to exclude

1  evidence of its net worth/financial standing.  If the Court denies that motion, then
2  Equifax requests that the trial be bifurcated such that the issue of punitive
3  damages, if any, be tried separately from liability.

### 19. IMPARTIAL EXPERTS – LIMITATION OF EXPERTS

5  The parties do not currently believe that the Court's appointment of
6  impartial expert witnesses or limitation of the number of expert witnesses is
7  advisable.

### 20. ATTORNEYS' FEES

9  **Plaintiff's Position:**

10  Plaintiff intends to seek recovery of attorney's fees if Plaintiff is successful
11  at trial. Plaintiff intends to bring a motion for attorney's fees and costs after entry
12  of final judgment pursuant to Local Rule 293.

13  **Equifax's Position:**

14  Equifax reserves all objections to the reasonableness of Plaintiff's attorney's
15  fees and costs should Plaintiff be the prevailing party.

### 21. TRIAL EXHIBITS

17  **Plaintiff's Position:**

18  Plaintiff does not see the need for special handling of trial exhibits. Plaintiff
19  believes that the Court should retain the exhibits through any appellate process.
20  Plaintiff intends on redacting social security numbers contained in exhibits to
21  address Equifax's concerns stated below.

22  **Equifax's Position:**

23  Equifax agrees with Plaintiff's position on this issue, although any exhibits
24  containing Plaintiff's confidential Social Security Number or other personal
25  identifying information should be treated in a way to maintain the confidentiality
26  of such information.

27  ///

28  ///

---

## 22. TRIAL PROTECTIVE ORDER

**Plaintiff's Position:**

No protective order has been entered in this case. Plaintiff does not believe a trial protective order pursuant to Local Rule 141.1(b)(2) is needed in this case.

**Equifax's Position:**

Equifax agrees with Plaintiff's position on this issue, although any exhibits containing Plaintiff's confidential Social Security Number or other personal identifying information should be treated in a way to maintain the confidentiality of such information.

## 23. MISCELLANEOUS

The parties have nothing to add to this category at this time.

## 24. JOINT STATEMENT OF THE CASE

This is a credit reporting case brought under the Fair Credit Reporting Act. Plaintiff, Christopher Shepard, is alleging that Equifax reported Plaintiff's AT&T account on Plaintiff's credit report with an unpaid balance for over a year after it had already been paid in full.

Plaintiff alleges that he submitted nine (9) disputes to Equifax and two (2) complaints against Equifax with the The Consumer Financial Protection Bureau or "CFPB" stating the account had been paid in full but was still being reported with a balance.

Plaintiff also alleges that DIVERSIFIED, the debt collector reporting the account for AT&T, submitted three (3) written requests to Equifax asking Equifax to update the account balance to show it had been paid in full.

Plaintiff contends that Equifax's violated the Fair Credit Reporting Act by: (1) failing to conduct a reasonable investigation of his nine (9) disputes; (2) preparing inaccurate credit reports; and (3) by failing to correct inaccurate or unverifiable information in his credit report. Plaintiff contends this caused him damages including the inability to purchase a home or obtain credit as well as

emotional distress.

Equifax denies that it violated the Fair Credit Reporting Act or it is liable to Plaintiff.

Dated: May 17, 2017        Respectfully submitted,

**SINNETT LAW, APC.**

BY: /s/ WAYNE A. SINNETT
WAYNE A. SINNETT, ESQ.
ATTORNEY FOR PLAINTIFF

Dated: May 17, 2019        Respectfully submitted,

**KING AND SPALDING LLP**

BY: /s/ JOHN ANTHONY LOVE
JOHN ANTHONY LOVE, ESQ.
ATTORNEY FOR EQUIFAX

1
2
3
4
5
6
7
8
9
10
11
12

## SIGNATURE CERTIFICATION

13    I, Wayne A. Sinnett, am the ECF user whose identification and password are

14 being used to file this document. I hereby certify that the content of this document

15 is acceptable to the above named signatories and that I have obtained said

16 signatories' authorization to affix their electronic signature to this document and

17 file it with the court.

18

19 Dated: May 17, 2019                    Respectfully submitted,

20

21                                        **SINNETT LAW, APC.**

22                                        BY: /s/ WAYNE A. SINNETT

23                                        WAYNE A. SINNETT, ESQ.
                                          ATTORNEY FOR PLAINTIFF

24
25
26
27
28